AMERICAN EXCHANGE BANK, Plaintiff, vs. LAKE MOTOR COMPANY and others, Defendants: SCHMITZ, Cross-complainant, Respondent, vs. MARTIN and another, Appellants.

*February 8—March 6, 1928.*

*Contribution: Liability of co-guarantors: Order of signing: Request of one guarantor for another to sign: Misrepresentation of officer of primary debtor: Mutual benefit of guarantors.*

1. The right to contribution arises when one jointly liable has paid more than his just proportion of a joint liability; and in actions at law it is not necessary to establish the insolvency of the principal debtor in order to enforce contribution. p. 306.
2. In the absence of circumstances rendering contribution inequitable, the first surety is not deprived of his right to contribution by the fact that the second surety assumed the obligation at his request. p. 307.
3. Where stockholders guaranteed the note of a corporation to enable it to obtain a loan from a bank, one guarantor, who received no part of the money secured through the loan and who did not agree to indemnify or save harmless his co-guarantors, who did not know that he had asked that they sign, was entitled to enforce contribution from the co-guarantors. p. 308.
4. Where such note was signed by the stockholders as guarantors and was not accepted until all four guarantors had signed, the fact that two signed before it was presented to the other two

American Exchange Bank v. Lake Motor Co. 195 Wis. 304.

did not make the liability of the last two signing secondary to that of the first two. p. 308.

5. The bank which had been requested to make the loan required the guaranty of G. S., an officer of the corporation, and of H. S., his father. H. S. agreed to sign the guaranty if appellants also signed; but G. S., who requested the appellants to sign, did not inform them that the bank did not require their signatures. G. S. told them, moreover, that H. S. had deposited collateral to secure the note, whereas the deposit was only collateral to the obligation of H. S. *Held,* that G. S. had no authority to bind H. S. by any representations, as he was acting solely as an officer of the corporation in effecting the loan. p. 309.

6. The appellants, two co-guarantors, being stockholders who manufactured a motor which was sold by the corporation and who handled mail for the corporation, whose business was conducted in their office, were not entitled, in a contribution action, to set up that respondent came into equity with unclean hands, in view of the fact that he lived in another city and intrusted the management of the company to such two co-guarantors and another, all of whom were interested in securing the loan in order that the corporation might continue in business. p. 309.

ESCHWEILER, J., dissents.

APPEAL from a judgment of the circuit court for Milwaukee county: E. T. FAIRCHILD, Circuit Judge. *Affirmed.*

Action upon a promissory note begun by the American Exchange Bank on the 25th day of November, 1922, against the Lake Motor Company, *Henry A. Schmitz,* George J. Schmitz, *A. E. Martin,* and *W. F. Tannhauser.* By cross-complaint contribution was demanded by *Henry A. Schmitz* against *A. E. Martin* and *W. F. Tannhauser.* Appeal from a judgment enforcing contribution entered March 9, 1926.

*Henry A. Schmitz,* George J. Schmitz, *A. E. Martin,* and *W. F. Tannhauser* owned stock in the Lake Motor Company which was in need of funds. These four men guaranteed the payment of a $15,000 note given to the plaintiff bank. The note was not paid at maturity. Interlocutory judgment for the amount of the note and interest was entered May 25, 1923, against *Henry A. Schmitz* and George J. Schmitz.

This judgment was paid by and assigned to *Henry A. Schmitz* and he thereafter interposed a cross-complaint in the same action asking contribution from appellants *Martin* and *Tannhauser*. A decree was entered against each of these appellants for one fourth of the amount of the judgment of the plaintiff bank which had been paid by *Henry A. Schmitz*.

For the appellants there was a brief by *Wheeler, Witte & Bark* of Milwaukee, and oral argument by *Lyman S. Wheeler*.

For the respondent there was a brief by *Lines, Spooner & Quarles,* and oral argument by *Howard A. Hartman,* all of Milwaukee.

Stevens, J.   (1) Appellants contend that they are not liable to contribute their share of the amount paid to the plaintiff bank because *Henry A. Schmitz* has made no effort to collect the amount of the judgment from the Lake Motor Company.   It appears that the motor company has some property in the form of dies and material which has value if it can be used in the manufacture of motors.   But this property is of very doubtful value unless used for that purpose, and it is problematical whether such use will be made of this property.

The right to contribution arises when one jointly liable has paid more than his just proportion of a joint liability. In actions at law, at least, it is not necessary to establish the insolvency of the principal debtor in order to enforce contribution.   *Boutin v. Etsell,* 110 Wis. 276, 280, 85 N. W. 964. We need not determine whether the same rule prevails in equity because the proof in this case establishes the fact, found by the trial court, that the motor company was insolvent from the time this action was begun and unable to meet its obligations as they matured.

(2) George J. Schmitz, who was arranging for the loan on behalf of the motor company, requested *Henry A.*

*Schmitz* to guarantee this note. *Henry A. Schmitz* consented on condition that the appellants would also become liable as guarantors. The appellants thereafter signed the guaranty at the request of George J. Schmitz.

Lord KENYON in a *nisi prius* decision in 1796 said, in speaking of the liability of several sureties, that "where one has been induced so to become surety at the instance of the other, though he thereby renders himself liable to the person to whom the security is given, there is no pretense for saying that he shall be liable to be called upon by the person at whose request he entered into the security." *Turner v. Davies,* 2 Esp. 478, 479.

Based upon this early statement of the law some courts have held that a surety who signs at the request of another surety is not liable to contribution at the suit of the surety who makes the request. But an examination of these cases will disclose that, almost without exception, they are cases where there is some other ground for relieving the second surety from liability for contribution. They are cases where the first surety has secured some personal benefit which does not inure to the benefit of the second party.

In the absence of some circumstances which would render contribution inequitable, the first surety is not deprived of his right to contribution by the fact that the second surety assumed the obligation at his request. The rule established by the great weight of the decided cases is well stated in the Michigan court: "The law implies from all joint obligations a *prima facie* liability to contribution, which may be overcome by showing that one is bound to protect the other. This may be, either because he is a principal debtor on his own account, or because he has undertaken to save the other harmless. But the mere request to another to join him as a co-surety would upon all ordinary rules of construction mean that he was to enter upon the same responsibilities and become bound on equal terms. Such we conceive to be the

doctrine of the authorities, in spite of some careless expressions which do not, we think, fairly interpret the doctrine applied." *McKee v. Campbell*, 27 Mich. 497, 499.

It is undisputed that the appellants did not know that *Henry A. Schmitz* had asked that they sign as sureties, and that they signed because they believed the bank required their signatures. There was no agreement that *Henry A. Schmitz* should indemnify appellants or save them harmless. *Henry A. Schmitz* received no part of the money secured by the bank loan. There is nothing which takes the case out of the general rule that all sureties or guarantors are liable for their proportionate share of the joint obligation.

*Henry A. Schmitz* and George J. Schmitz signed the guaranty before it was presented to the appellants for their signature. This fact did not create a relationship where the liability of the appellants was secondary to that assumed by *Henry A. Schmitz* and George J. Schmitz. The note was not completed and was not accepted by the bank until all four guarantors had signed. They thereby became equally liable upon the guaranty.

(3) George J. Schmitz, acting as secretary for and on behalf of the motor company, applied to an official of the plaintiff bank for the loan here in question. This official stated that the bank would require the guaranty of *Henry A. Schmitz* and George J. Schmitz. When the matter was presented to *Henry A. Schmitz* he agreed to sign on condition that appellants would also guarantee the note. The application for the loan was then passed upon by the discount committee of the bank with the understanding that the paper should be guaranteed by the four men who signed the written guaranty, and that certain stock belonging to *Henry A. Schmitz* should be deposited as collateral to his personal guaranty on the note.

Appellants contend that the right of *Henry A. Schmitz* to contribution was barred (1) by the fact that George J.

Schmitz did not disclose to them that the bank official to whom the matter was first presented had not required that appellants guarantee the note, and (2) because George J. Schmitz stated that the bank stock of *Henry A. Schmitz* had been deposited as collateral to the note, when in fact it was only deposited as collateral to the obligation assumed by *Henry A. Schmitz* in signing the guaranty.

These representations on the part of George J. Schmitz do not bar the right of *Henry A. Schmitz* to contribution. George J. Schmitz was not acting for or representing *Henry A. Schmitz* in this matter. He had no authority to represent or to bind *Henry A. Schmitz*. He was acting solely as an officer of the motor company, in which capacity his statements did not in any way affect the right of *Henry A. Schmitz* to recover contribution from his co-guarantors.

(4) Finally it is urged that the right of *Henry A. Schmitz* to recover should be denied because he does not come into equity with clean hands. There is no basis for such a claim. The appellants were part owners of the motor company. The business of the motor company was conducted in their office. They handled the mail of the motor company. They manufactured the motor which was sold by the company. The business of the motor company was conducted in Milwaukee. *Henry A. Schmitz,* who lived in Appleton, intrusted the management of the motor company to George J. Schmitz and to these appellants. Appellants were interested in securing the loan here in question in order that the motor company might continue business.

It proved to be a bad venture. Now that it has failed, it is probably only human nature that all who were connected with it should try to get out from under its obligations. It is a case where each should bear his proportionate share of the loss. The judgment accomplishes that purpose. It should be affirmed.

*By the Court.*—Judgment affirmed.

ESCHWEILER, J. (*dissenting*).    As recognized inferentially at least in the majority opinion, contribution may be denied when to grant it would be inequitable, and therefore, and because I think the facts disclose a situation where it is inequitable to allow *Henry A. Schmitz* the relief given him as against *Martin* and *Tannhauser,* I must dissent.

Quite clearly *Martin* and *Tannhauser* would not have signed the guaranty unless the responsible one of the other two, *Henry A. Schmitz,* also signed; *Henry A. Schmitz* in turn refused to be a party on the obligation unless *Martin* and *Tannhauser* would do likewise; and when *Henry A. Schmitz* so informs his son, George J. Schmitz, he intrusts the son with the duty of obtaining the signatures of *Martin* and *Tannhauser*.   In the performance of that service or duty George J. Schmitz makes to them an important and material representation, viz. that certain bank stock of *Henry A. Schmitz* is to be put up as collateral and that it was sufficient to relieve all other parties from possible eventual liability.    The representation being made, and, evidently, naturally and reasonably relied upon, I think it is beside the mark to say that George J. Schmitz did not represent *Henry A. Schmitz* in so doing, and because of that then to say that *Henry A. Schmitz* may now have the direct and substantial benefit resulting therefrom, and still as to him any such representation may be blotted out of the record, although it clearly would have barred George J. Schmitz had he sought to so enforce contribution, seems to me inequitable.    Having appointed his son his agent to procure the signatures of the others, I do not think *Henry A. Schmitz* should be bound by what that agent did in so procuring them.

Neither do I think that *Martin* and *Tannhauser,* in view of the family and business relationship between the father and son, were negligent in failing to view with suspicion or to follow with search such representation.